UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE
2004 MAY 26  P 12: 01
U.S. DISTRICT COURT
DISTRICT OF MASS.

CIVIL ACTION NO. 03 CV 12493 RCL

| | |
|---|---|
| MELISSA SEPPI, | ) |
|  PLAINTIFF | ) |
| | ) |
| VS. | ) |
| | ) |
| Mezzanotte, LLC et al, | ) |
|  DEFENDANTS | ) |

### JOINT MOTION FOR AN ORDER FOR PRODUCTION OF MEDICAL RECORDS

Now comes the parties to the above entitled action and jointly request this Court issue an order to the Keeper of Records at the Lahey Clinic, 41 Mall Road Burlington, Massachusetts to produce the medical records of Meghan Putnam for her admission to the emergency room for care and treatment that occurred on 11/16/02.

As grounds hereof the parties state:

1. The Plaintiff has brought this liquor liability action against Mezzanotte, LLC d/b/a Vision Nightclub and the liquor license holder, Frank C. Amato, for an alleged violation of the Defendants' duty not to serve alcoholic beverages to a minor.

2. Meghan Putnam, was born on March 11, 1984 and on November 15, 2002 was eighteen years old.

3. On November 15, 2002 Meghan Putnam and the Plaintiff, Melissa Seppi, drove from Nashua, New Hampshire to Vision Nightclub in Saugus Massachusetts, the Defendant's establishment.

4. Vision Nightclub is a bar that serves alcoholic beverages and has dancing. Vision Nightclub allows both drinking age adults and non-drinking age adults entrance to the club at the same times.

5. The Plaintiff alleges that from the time that the Plaintiff and Meghan Putnam entered the club, at approximately 12:30 AM until they left at approximately 2 AM, Meghan Putnam was served and furnished three Long Island Iced Ts, an

alcoholic beverage containing in each drink a mix of Vodka, Rum, Gin, Triple Sec and Tequila.

6. The Plaintiff alleges that Meghan Putnam and the Plaintiff left Vision Nightclub at approximately 2 a.m. on November 16, 2002 and Meghan Putnam agreed to drive the Plaintiff's car back to Nashua as she promised.

7. The Plaintiff alleges that Meghan Putnam drove out of the parking lot, turned right onto Route 1 north and exited onto Route 128 south. At approximately 2:15 a.m. on November 16, 2002, Meghan Putnam struck a jersey barrier while driving Plaintiff's car in the left hand passing lane of route 128 south in Wakefield.

8. As a result of the car striking the jersey barrier, the Plaintiff was thrown from the car out onto the third travel lane of route 128.

9. While lying in the road the Plaintiff was immediately run over by another vehicle that was traveling south on route 128.

10. Meghan Putnam was taken from the scene by ambulance to the Lahey Clinic in Burlington, Massachusetts.

11. The State Police responded to the scene. Meghan Putnam admitted to the State Police, who interviewed her at the Lahey Clinic, that she consumed three (alcoholic) Long Island Iced Ts at Vision Nightclub between 12:30 and 2 a.m. A copy of that portion of the State Police Report is attached hereto as Exhibit "A".

12. Upon information and belief, the Plaintiff states that the Lahey Clinic, at the request of the State Trooper, took a blood sample from Meghan Putnam to test her for blood alcohol. It is believed that her blood alcohol level was found to be significantly higher than the legal limit.

13. The Massachusetts State Police, Collision Analysis Reconstruction Section, performed an accident analysis and concluded that Meghan Putnam was operating the vehicle while her ability to operate the vehicle was impaired due to alcohol consumption and that Meghan Putnam operated the vehicle at excessive speed.

14. The Massachusetts State Police, Collision Analysis Reconstruction Section, performed an accident analysis and concluded that the proximate cause of the crash was Meghan Putnam's reckless operation of the vehicle while under the influence of alcohol.

15. Meghan Putnam has been criminally charged in the Malden District Court with operating under the influence of intoxicating liquor causing serious bodily injury.

Her criminal matter has been pending for over eighteen months and it is scheduled for trial on or about August 10, 2004.

16. The Defendants noticed her deposition, but in light of the pending criminal matter facing her, both counsel for the Plaintiff and the Defendant believe that Meghan Putnam will claim the Fifth Amendment at her deposition and have thus postponed it.

17. The Plaintiff, who will be testifying at Meghan Putnam's upcoming criminal trial is not speaking to Meghan Putnam and it is highly unlikely that Meghan Putnam will execute a release to allow the parties in this action to obtain the records.

18. Plaintiff's counsel subpoenaed the Lahey Clinic to produce the records on May 18, 2004, but the Lahey Clinic has refused to produce the records and did not show up for the scheduled keeper of the records deposition.

19. The issue of Meghan Putnam's sobriety at the time of this collision is relevant to both the Plaintiff and the Defendants in this action. The vital fact of Meghan Putnam's sobriety, which is believed to be contained in the alcohol blood test performed shortly after the accident by the Lahey Clinic, is crucial for the Plaintiff's prosecution of this claim and for the Defendants' defense of this claim.

WHEREFORE, both parties respectfully request this Honorable Court issue an order ordering the Lahey Clinic to produce certified copies of the medical records of Meghan Putnam that contain any and all evidence of her state of intoxication when she was admitted to the emergency room on November 16, 2002. A proposed order is attached hereto.

MELISSA SEPPI,
By her attorney,

Edward F. Wallace, Esq.
BBO#: 513540
Law Offices of Edward F. Wallace, P.C.
Edward F. Wallace, Esq.
11 School St.
N. Chelmsford, MA  01863
(978) 250-8887

Mezzanotte, LLC d/b/a and Frank C. Amato
By their Attorney,

Kevin G. Kenneally, Esq.
BBO# 550050
Donovan Hatem LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500

be blood and a small dent on and under the driver's door of her gray/white Lexus SUV, bearing MA registration 814YFX. FANTASIA wiped the above area with a leaf and confirmed that it was not a dent but appeared to be blood. FANTASIA immediately notified Billerica PD, who I had asked to examine the Lexus and conduct an interview with FANTASIA. Billerica OFFICER COGSWELL and SERGEANT ROCHE arrived at FANTASIA'S address, examined the Lexus, and were instructed to tow the vehicle to their station in order to preserve the blood splatter because it was raining out. Billerica DETECTIVE MIRASOLO conducted the interview with FANTASIA who provided written consent that authorized Billerica PD to tow her vehicle for further investigation by MSP, as well as a signed written statement regarding her actions at the time of the accident. A copy of Billerica PD's report and FANTASIA'S written consent and statement are attached to the end of this report.

On November 17, 2002 at approximately 10:45 a.m., I arrived at Layhe Clinic and interviewed PUTNAM, who told ME that her and SEPPI came from Visions night club in Saugus, MA (18 years of age and older), before they got into the accident. PUTNAM stated that she was holding the "fake ID" for SEPPI, who had no pockets. PUTNAM also stated that she used her own ID to get into Visions and received a "V" stamp on the back of her right hand from the doorman, which means that a person is under the age of 21. I did observe a faded "V" on PUTNAM'S right hand at the hospital. I told PUTNAM that I observed an orange wrist band, which means that a person is over the age of 21, on her right hand at the accident scene as well as at the hospital. PUTNAM stated that when she went into Visions, she immediately went into the restroom to wash as much of the stamp off as she could, found a bracelet on the floor in the corner opposite of the restroom and put it on her wrist. I conducted a subsequent interview with PUTNAM, who admitted that Vision's part-time DJ, JOSHUA SPITALERI, provided her with a bracelet after she went to the restroom to wash her stamp off her hand. PUTNAM then stated that she consumed three (alcoholic) Long Island Ice T's from the time she entered Visions to the time she left (12:30 a.m. to 2:00 a.m.). PUTNAM stated that she and her friends had frequent Visions in the past and she became friendly with SPITALERI on Halloween night. PUTNAM stated that she drove SEPPI'S vehicle from Visions, SEPPI being the front seat passenger, and proceeded home.

On November 17, 2002 at approximately 11:15 a.m., I arrived at Mass General Hospital and spoke with SEPPI'S parents prior to interviewing her, who were both present during the interview. SEPPI stated that she used the above mentioned "fake ID" the night in question and gave it to PUTNAM to hold. SEPPI stated that PUTNAM used her own ID to get in but received an over 21 bracelet from SPITALERI, who they had met in the parking lot prior to entering Visions. SEPPI stated that SPITALERI had given her and her friends bracelets in the past as well as buy them alcoholic beverages and according to SEPPI, SPITALERI knew that she and her friends were under 21 years of age. SEPPI asked PUTNAM to drive home from Visions, which PUTNAM did, because she had too much to drink but did not realize that PUTNAM had too much to drink herself. During a telephone conversation with SEPPI'S mother, MICHELLE SEPPI, on Friday, November 29, 2002 at approximately 11:50 p.m., she informed me that according to her daughter, she used the fake ID the night prior to the accident and that SPITALERI

*TPR. MJ Fozni #2740*