UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MELISSA SEPPI,<br>Plaintiff,<br><br>v.<br><br>MEZZANOTTE, LLC d/b/a VISION<br>NIGHTCLUB and FRANK C. AMATO,<br>Defendants. | )<br>)<br>)<br>)   C.A. NO.: 03 CV 12493 RCL<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT FANK C. AMATO'S ANSWERS TO PLAINTIFFS REQUEST FOR ADMISSIONS

Defendant Frank C. Amato ("Amato") hereby responds to Plaintiff, Melissa Seppi's

Request for Admissions, pursuant to Rule 36 of the Federal Rules of Civil Procedure. These

responses are provided in accordance with and pursuant to the definitions and instructions

contained in the Federal Rules of Civil Procedure, and any definition or instruction set forth in

Plaintiff's Request for Admissions which is more restrictive or expansive, or otherwise does not

comport with the provisions of the Federal Rules, is hereby objected to. In the event additional

information is discovered, these responses will be supplemented in accordance with Rule 26(e).

### GENERAL OBJECTIONS

In order to preserve his objections to Plaintiff's Request for Admissions, Amato hereby

incorporates the following General Objects into each response. The failure to specifically

incorporate a General Objection shall not be construed as a waiver of these General Objections.

1.     Amato objects to Plaintiff's Request for Admissions to the extent they call for

disclosure of information protected by the attorney-client privilege, and/or work product

doctrine.

2.    Amato objects to Plaintiff's Request for Admissions to the extent they seek information or documentation not relevant to the issues raised in this lawsuit and which are not reasonably calculated to lead to the discovery of relevant and admissible evidence.

3.    Amato objects to Plaintiff's Request for Admissions to the extent they are vague, ambiguous, overly broad, and/or unduly burdensome.

4.    Amato objects to Plaintiff's Request for Admissions insofar as they seek information already within Plaintiff's knowledge, possession, and/or control.

5.    Amato objects to Plaintiff's Request for Admission to the extent they ask Amato to speculate about or provide information not in its possession, custody or control.

6.    Amato reserves the right to supplement his responses.

Amato's General Objections are incorporated into each of the following responses, shall be deemed continuing as to each request and are not waived, nor in any way limited, by the following responses:

**Statements**

Request No. 1

Defendant owned and operated Brickhouse/Vision Nightclub.

Response No. 1

Admitted.

Request No. 2

Brickhouse/Vision Night was located on Route 1 in Saugus, Massachusetts.

Response No. 2

Admitted.

Request No. 3

Brickhouse is a restaurant serving pizza and other foods.

Response No. 3

Admitted.

Request No. 4

Vision Nightclub is a nightclub located in the same building as Brickhouse.

Response No. 4

Admitted.

Request No. 5

There is not any public transportation stops at Vision Nightclub.

Response No. 5

Objection. Upon belief the Massachusetts Bay Transportation Authority and other subsidiary entities operate in the vicinity. Taxi service, van or car transportation and other modes of transportation for hire also exist in the area.

Request No. 6

There is no subway stop nearby Vision Nightclub.

Response No. 6

Admitted.

Request No. 7

Brickhouse/Vision Nightclub had a liquor license.

Response No. 7

Denied.

Request No. 8

Frank C. Amato, Defendant in this action, held said liquor license.

Response No. 8

Admitted.

Request No. 9

Frank C. Amato, Defendant in this action, was the statutorily required manager of Brickhouse/Vision Nightclub.

Response No. 9

Admitted.

Request No. 10

Frank C. Amato, Defendant in this action, was the Manager of Mezzanotte, LLC.

Response No. 10

Admitted.

Request No. 11

Vision Nightclub would be open from 10 P.M. until 2 A.M. on Thursday, Friday and Saturday nights in November 2002.

Response No. 11

Admitted.

Request No. 12

Thursday, Friday and Saturday nights in November 2002 were eighteen plus (18+) nights at Vision Nightclub.

Response No. 12

Admitted.

Request No. 13

On eighteen plus (18+) nights at Vision Nightclub anyone older than eighteen years of age could be admitted to the club.

Response No. 13

Admitted that on eighteen plus (18+) nights at Vision Nightclub anyone eighteen years of age or older could be admitted to the club.

Request No. 14

On eighteen plus (18+) nights at Vision Nightclub liquor would be served on the premises.

Response No. 14

Admitted as to patrons of legal age.

Request No. 15

To legally drink an alcoholic beverage in a liquor licenses establishment in Massachusetts a person would have to be twenty-one (21) years of age.

Response No. 15

Admitted.

Request No. 16

On November 15, 2002 Vision Nightclub had a main bar, a portable bar, a beer tub and two waitresses assigned to selling test tube shots.

Response No. 16

Admitted.

Request No. 17

The total capacity of Brickhouse/Vision Nightclub was 237 people.

Response No. 17

Denied.

Request No. 18

November 15, 2002 was a busy night at Vision Nightclub.

Response No. 18

    Objection. The defendant objects to this request on the grounds that it is vague, ambiguous and open to a variety of interpretations, therefore, denied.

Request No. 19

    On busy nights, lines of people would form outside Vision Nightclub waiting to get in.

Response No. 19

    Admitted.

Request No. 20

    Gregory Krachmal was a bouncer/head of security at Vision Nightclub.

Response No. 20

    Admitted.

Request No. 21

    Michael Maly was the doorman at Vision Nightclub.

Response No. 21

    Admitted that Michael Maly was one of the doorman at Vision Nightclub.

Request No. 22

    Vision Nightclub would pay Michael Maly a flat rate of $75 per night, in cash.

Response No. 22

    Admitted.

Request No. 23

    Joshua Spitaleri, from June 2001 and continuing to present was and is a part-time DJ at Vision Nightclub.

Response No. 23

    Denied.

Request No. 24

In 2002, Vision Nightclub would pay Joshua Spitaleri, a flat rate of approximately $125 per night, in cash, for his was as a DJ at Vision Nightclub.

Response No. 24

Denied.

Request No. 25

Vision Nightclub did not give to Joshua Spitaleri any wage/miscellaneous income statements, such as a Form 1099 etc for 2001, 2002 and 2003.

Response No. 25

Admitted.

Request No. 26

In 2002 Joshua Spitaleri, was a promoter for Vision Nightclub.

Response No.26

Denied.

Request No. 27

In 2002, Joshua Spitaleri would go to various locations and pass out flyers advertising Vision Nightclub and would put together guest lists for Vision Nightclub.

Response No. 27

Denied.

Request No. 28

The playing of music by a DJ at Vision Nightclub was an integral part of the business of Vision Nightclub.

Response No. 28

Denied.

Request No. 29

Joshua Spitaleri's efforts of passing out flyers and putting together guest lists for Vision Nightclub to get people to go to Vision Nightclub was an integral part of the business of Vision Nightclub.

Response No. 29

Denied.

Request No. 30

Vision Nightclub would charge a ten ($10) cover charge.

Response No. 30

Admitted.

Request No. 31

Joshua Spitaleri had authority from Frank Amato, to put someone's name on a guest list wherein that person would not have to pay full cover charge to gain admission to Vision Nightclub.

Response No. 31

Denied.

Request No. 32

Joshua Spitaleri could also have someone's name put on a VIP list wherein that person would not have to pay any cover charge to gain admission to Vision Nightclub.

Response No. 32

Denied.

Request No. 33

In 2002, Vision Nightclub got approximately 30% of its revenue from cover charges and approximately 40% of its revenue from the sale of alcoholic beverages.

Response No. 33

Admitted.

Request No. 34

In 2002, Joshua Spitaleri was not requested to ever pay a cover charge to gain admission to Vision Nightclub.

Response No. 34

Denied.

Request No. 35

Joshua Spitaleri was born on August 3, 1982 and was twenty (20) years old on November 15, 2002.

Response No. 35

Admitted.

Request No. 36

Vincent Procopio was a friend of Joshua Spitaleri.

Response No. 36

Unknown as to the mutual feelings, therefore, denied.

Request No. 37

In 2002 Vincent Procopio was a part-time DJ at Vision Nightclub.

Response No. 37

Admitted.

Request No. 38

Vincent Procopio was born November 14, 1983, and was nineteen years old on November 15, 2002.

Response No. 38

Unknown, therefore, denied.

Request No. 39

When Joshua Spitaleri worked as a DJ at Vision Nightclub, Vision Nightclub would provide all of the equipment that Spitaleri would need, such as the turntables, speakers, mixers etc. and Spitaleri would provide the music.

Response No. 39

Objection. The equipment referenced is affixed or installed into the location and is not "provided" in the sense referenced, therefore, denied.

Request No. 40

Joshua Spitaleri knew all the bouncers/security personnel at Vision Nightclub.

Response No. 40

Admitted.

Request No. 41

Joshua Spitaleri knew the doorman at Vision Nightclub, Michael Maly.

Response No. 41

Admitted.

Request No. 42

Joshua Spitaleri was friend of Frank Amato.

Response No. 42

Admitted.

Request No. 43

Vision Nightclub would have the doorman place a bracelet on the right wrist of persons whom he determined, by checking the identification they presented to him, were twenty-one years of age or over.

Response No. 43

Admitted.

Request No. 44

Vision Nightclub would have the doorman place a back "V" or "X", with an indelible marker, on the back of the right hand of persons whom he determined, by checking the identification they presented to him, were under twenty-one years of age.

Response No. 44

Admitted.

Request No. 45

Vision had a written policy regarding a "rule of thumb for carding guests" who appeared to be thirty years of age or under.

Response No. 45

Admitted.

Request No. 46

The doorman at Vision Nightclub would confiscate any identification presented to him that was either fake or not the true identification of the person who was presenting it to him for admission to Vision Nightclub.

Response No. 46

Admitted.

Request No. 47

Vision Nightclub did not have any written policies relative to the use of bracelets or black marks to distinguish between a person over the age of twenty-one and under twenty-one.

Response No. 47

Admitted.

Request No. 48

The bracelets used at Vision Nightclub were purchase from Precision Dynamics Corporation.

Response No. 48

Admitted.

Request No. 49

The bracelets used at Vision Nightclub cost approximately six cents each.

Response No. 49

Admitted.

Request No. 50

The bracelets used at Vision Nightclub were fluorescent colored plastic.

Response No. 50

Admitted.

Request No. 51

The bracelets used at Vision Nightclub would stick out under the lights in Vision Nightclub.

Response No. 51

Objection. The defendant objects to this request on the grounds that it is vague, imprecise, ambiguous and open to a variety of interpretations, therefore, denied.

Request No. 52

The bracelets used by Vision Nightclub, on any given night in November of 2002, would all be the same color bracelets.

Response No. 52

Objection. The request as phrased is imprecise, therefore, denied.

Request No. 53

The bracelets were kept in Frank Amato's office within Brickhouse/Vision Nightclub.

Response No. 53

Admitted.

Request No. 54

At least two other persons in addition to Frank Amato had access to the bracelets in his office.

Response No. 54

Admitted only insofar as two other persons employed in responsible positions by defendants, in addition to Frank Amato, had access to the bracelets in Frank Amato's office.

Request No. 55

Frank Amato was satisfied that the bracelets used by Vision Nightclub could not be taken off the wrist without destroying them.

Response No. 55

Objection. This request was presented as a question and answered in the Deposition of Frank Amato on October 25, 2004. The plaintiff is directed to page 125 of the deposition transcript.

Request No. 56

Frank Amato was satisfied that the bracelets used by Vision Nightclub, if taken off the wrist, would be non-usable again.

Response No. 56

Objection. The detailed deposition testimony on this topic is misstated and therefore denied.

Request No. 57

The doorman was supposed to put the bracelets on the right wrist in such a manner so that they could not be slipped off the wrist.

Response No. 57

Objection. The defendant objects to this request on the grounds that it is vague, ambiguous and open to a variety of interpretations.

Request No. 58

The bracelets used by Vision Nightclub were not stretchable.

Response No. 58

Objection. The defendant has no expertise in plastics or polymers and therefore denied.

Request No. 59

Vision Nightclub held a Halloween costume party on October 31, 2002, which was an eighteen plus (18+) night.

Response No. 59

Admitted.

Request No. 60

Meghan Putnam was born on March 11, 1984, and was eighteen years old on November 15, 2002.

Response No. 60

Unknown and therefore denied.

Request No. 61

On an eighteen plus (18+) night anyone under twenty-one years of age was not allowed within an arm's length of the bars in Vision Nightclub.

Response No. 61

Admitted.

Request No. 62

The bartenders and waitresses would always look for a faded black mark on the back of the right hand prior to serving alcoholic beverages to anyone on an eighteen plus (18+) night at Vision Nightclub.

Response No. 62

Objection. The staff was required to follow procedure as explained in detail at depositions.

Request No. 63

If a bartender at Vision Nightclub saw a faded black V or X mark, or a black V or X mark on the back of someone's right hand, and also saw a bracelet on their right wrist, the

responsibility of the bartender was to then call a bouncer to have that person escorted out of Vision Nightclub.

## Response No. 63

Admitted.

## Request No. 64

If a bouncer at Vision Nightclub saw a faded black V or X mark, or a black V or X mark on the back of someone's right hand, and always saw a bracelet on their right wrist, the responsibility of the bouncer was to escort that person out of Vision Nightclub.

## Response No. 64

Admitted.

## Request No. 65

The lighting at the bar(s) was sufficiently bright so that the bartenders could see a black mark on the back of a person's right hand.

## Response No. 65

Objection. The defendant objects to this request on the grounds that it is vague, ambiguous and open to a variety of interpretations.

## Request No. 66

Eight bounders/security personnel were stationed throughout Vision Nightclub, throughout the entire business hours of November 15-16. 2002.

## Response No. 66

Denied.

## Request No. 67

One of the duties of these bouncers at Vision Nightclub was to spot people who were underage that were consuming alcoholic beverages and bring them to the front door an ask them to leave.

## Response No. 67

Admitted.

**Documents**

Request No.1

The document contained as Exhibit 1 is a complete and true copy of the Defendant's written rules, regulations or practices and procedures concerning the sale of or distribution of alcohol on the premises of Brickhouse/Vision Nightclub, as well as the Defendant's job descriptions and written training procedures.

Response No. 1

Admitted.

Request No. 2

Exhibit 2 is a bracelet that is the same as was supplied by Precision Dynamics Corporation to Vision Nightclub and used by Vision Nightclub in November 2002.

Response No. 2

Objection. Defendant as no information about the precise item or color in used on said date.

Request No. 3

Exhibit 3 is a true copy of a license issued to Melissa Michalski, which was produced by the Massachusetts State Police.

Response No. 3

Defendant has no knowledge about the person stated and unknown as to authenticity or original and therefore, denied.

Request No. 4

Exhibit 4 is a true copy of the medical records of Meghan Putnam for treatment she received at Lahey Clinic during her admission following a motor vehicle accident of November 16, 2002.

Response No. 4

Unknown and therefore denied.

Request No. 5

Exhibit 5 is a true copy of the cell phone records of Melissa Seppi for November 15th and 16th 2002.

Response No. 5

Unknown and therefore denied.

Request No. 6

Exhibit 6 is a true copy of the records of the cell phone used by Joshua Spitaleri for October 30, 2002 through November 30, 2002.

Response No. 6

Unknown and therefore denied.

Request No. 7

Exhibit 7 is a true copy of the work schedule of Brickhouse/Vision Nightclub for the period November 11, 2002 through November 17, 2002.

Response No. 7

Admitted.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS ___3___ DAY OF ___March____, 2005.

_____
FRANK C. AMATO

As to Objections:

By its attorneys,

John A. Donovan, Jr.
BBO No. 130600
Kevin G. Kenneally
BBO No. 550050
Donovan Hatem LLP
Two Seaport Lane
Boston, MA 02210
(617) 406-4500

Dated:

00893742/23809.1

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document
was served upon the attorney of record for each other
party by (hand) (mail) on