UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 03 CV 12493 RCL

| | |
|---|---|
| MELISSA SEPPI, | ) |
| PLAINTIFF(S) | ) |
| | ) |
| vs. | ) |
| | ) |
| MEZZANOTTE, LLC D/B/A VISION | ) |
| NIGHTCLUB and FRANK C. AMATO, | ) |
| | ) |
| DEFENDANT(S) | ) |

### PLAINTIFF'S REPLY BRIEF TO DEFENDANTS' MEMORANDUM OF LAW REGARDING RECOVERY OF MEDICAL EXPENSES AND ADMISSIBILITY OF MEDICAL BILLS

The plaintiff, Melissa Seppi, hereby submits this reply brief to defendants' memorandum of law on the issue of recoverability and admissibility of plaintiff's medical bills:

### I. THE PLAINTIFF IS ENTITLED TO BE COMPENSATED FOR THE FULL AMOUNT OF HER DAMAGES WITHOUT REGARD TO PAYMENTS FROM ANY COLLATERAL SOURCE.

The law is well settled in Massachusetts that damages recoverable for personal injuries inflicted through the negligence of another are not to be reduced by reason of the fact that the injured party had been partly compensated for his loss by a source collateral to the defendant tortfeasor. Larocca v. Borden, Inc., 276 F.3d 22 (1st Cir.2002); England v. Reinauer Transp. Companies, L.P., 194 F.3d 265 (1st Cir.1999); Fitzgerald v. Expressway Sewerage Const., Inc., 177 F.3d 71 (1st Cir.1999); Harris-Lewis v. Mudge, 803 N.E.2d 735, 60 Mass.App.Ct. 480 (2004). Under the "collateral source rule", a defendant is prohibited from introducing evidence of the plaintiff's receipt of other compensation for her injury. Subject to various exceptions, the rule bars evidence of benefits received from an accident insurance policy, workers' compensation insurance, an employer and other sources. Goldstein v. Gontarz, 364 Mass. 800, 808-09, 309 N.E. 2d

1

196, 202-03 (1974). The reason for this rule is that the defendant, who by his negligence has injured another, owes to such other compensation for the injuries he has inflicted and the payment for those injuries from a collateral source cannot relieve the defendant of his obligation.   Likewise, a plaintiff ordinarily may not show that the defendant is insured against liability. Id. at 808, 202, citing Braun v. Bell, 247 Mass. 437 (1924), Gladney v. Holland Furnace Co., 336 Mass. 366 (1957), Prosser, Torts (4th ed.) sec. 83, p. 549 (1971). [1]

The collateral source rule in Massachusetts is alive and well. It is axiomatic that, when parties litigate a case in federal court on the basis of diversity jurisdiction, state law supplies the substantive rules of decision. Fitzgerald, supra at 74. Hence, the state-law collateral source rule supplies the rules of decision.     The substantive aspect of the collateral source rule in Massachusetts provides that "compensation received from a third party unrelated to the tortfeasor-defendant (the collateral source) will not diminish an injured party's recovery from that tortfeasor". England, supra, citing Fitzgerald v. Expressway Sewerage Constr. Inc., 177 F.3d 71 (1st Cir. 1999). When a case is being heard in federal court, the evidentiary, as opposed to the substantive, aspects of the collateral source rule are governed by the Federal Rules of Evidence, particularly rules 401, 402, and 403. England, supra at 273. Under the evidentiary strand of the collateral source rule, "evidence of collateral benefits is generally inadmissible". Id. When such evidence is relevant to some other contested issue, it may be admitted if it is not unfairly prejudicial. Id., citing Fitzgerald, supra at 75.

In the instant case, the defendants are seeking to circumvent the law and reduce their potential liability to the plaintiff by claiming that the plaintiff is not entitled to be compensated for her full damages because plaintiff's medical bills were discounted by Medicaid. The defendants seek to limit the plaintiff's potential recovery to the actual fees paid or payable by Medicaid rather than the total cost of the medical services received by the plaintiff.    Additionally, defendants seek to challenge the actual amounts of the medical bills by cross-examining the witness authenticating the bills with evidence

---

[1] The Court noted in Goldstein that "[e]xposing juries to such information is condemned because it is not itself probative of any relevant proposition and is taken to lead to undeserved verdicts for plaintiffs and exaggerated awards which jurors will readily load on faceless insurance companies supposedly paid for taking the risk", citing Wigmore, Evidence (3d ed.) sec. 282a (1940).

of collateral source payments. In support of their position, the defendants cite several cases as authority which plaintiff asserts are not applicable and inapposite to the case at bar. The plaintiff contends that the defendants' arguments have no merit and would only serve to prejudice plaintiff's damages claim and provide an improper windfall to the defendants.

## II.    DEFENDANTS' ARGUMENTS HAVE NO MERIT AND THE CASES CITED ARE NOT APPLICABLE AND INAPPOSITE TO THE CASE AT BAR

Defendants claim that evidence of plaintiff's medical expenses should be discounted by collateral payments from Medicaid. To support their position, the defendants rely on McAmis v. Wallace, 980 F. Supp. 181 (1997). In McAmis, the District Court of Virginia interpreted Virginia state law which provided that a personal injury plaintiff could not recover as compensatory damages the amount of medical expenses written off by the health care provider pursuant to that provider's contract to serve Medicaid beneficiaries and that the collateral source rule did not apply since the plaintiff did not incur the Medicaid discount as an expense. See M.G.L. Ch. 231 § 60G.[2] The question before the Federal Court in Virginia was whether an injured plaintiff may include in a claim for compensatory damages the amounts written off by a health care provider pursuant to that provider's contract to serve Medicaid beneficiaries. Id. at 183. Since the Virginia Supreme Court had not yet had occasion to decide this question, the District Court interpreted Virginia state law and held that the write-off amounts could not be included in any compensatory damage award. Id. at 186.

However, the Supreme Court of Virginia, three years after the decision in McAmis decided the issue conclusively in Actuar v. Letourneau, 260 Va. 180, 531 S.E.2d 316 (2000), when it ruled that the collateral source rule prevailed and that pursuant to the rule, compensation or indemnity received by a tort victim from a source collateral to the tortfeasor may not be applied as a credit against the quantum of damages

---

[2] In fact, the Massachusetts legislature specifically addressed the issue of allowing evidence of collateral source payments in tort cases. M.G.L. c. 231, sec. 60G allows evidence of collateral source payments in medical malpractice claims. However, the legislature specifically carved out an exception in these cases when collateral sources of payment involve Medicaid benefits. M.G.L. c. 231, sec. 60G(c). In such cases, the right of subrogation survives and the court may not deduct those amounts from the damage award. See Harlow v. Chin, 405 Mass. 697, 545 N.E.2d 602 (1989).

3

the tortfeasor owes. Id. at 192, 322.[3] The Virginia Supreme Court further explained that the focal point of the collateral source rule is not whether an injured party has "incurred" certain medical expenses. Rather, it is whether a tort victim has received benefits from a collateral source that cannot be used to reduce the amount of damages owed by a tortfeasor. Id. Therefore, the holding in McAmis is irrelevant to the instant case and defendant's reliance on same is unpersuasive. The defendants next contend that they have a "substantive right" to exclude the plaintiff's medical bills and, even if admitted, to challenge them on cross-examination to establish that the charges are not accurate or "reasonable" since a lower amount was accepted for the treatments. In support of its position, the defendants rely on Jenkins v. Roderick, 156 F. Supp. 299 (D. Mass. 1957). Again, this case is irrelevant to the instant case. In Jenkins, the plaintiff, a seaman, brought an action under the Jones Act. The issue involved the propriety of allowing a jury trial to a seaman not only on his Jones Act count, but also on his unseaworthiness count, and on his count claiming costs for maintenance and cure. The question before the Court was whether there was pendent jurisdiction so that the maintenance and cure count would go to the jury along with the Jones Act count. Id. at 304 [4] Again, this case is entirely not on point to the case at bar and lends no support for defendants' proposition that it can cross-examine the plaintiff's medical bills with extrinsic evidence of collateral source payments.

The defendants further argue that under Massachusetts's law, a plaintiff is only entitled to recover damages for medical expenses she "has paid or has become legally obligated to pay to treat her injury". In support of this position, the defendants rely on Daniels v. Celeste, 303 Mass. 148, 21 N.E.2d 1 (1939), a case decided 35 years before Goldstein, supra. Once again, this case is irrelevant and inapposite to the case at bar. In Daniels, the issue involved whether a husband could collect as his damages the expenses of nursing services provided him by his wife. The court held that by reason of the marital relation, the husband could not make a valid contract with his wife to pay her for the services in question; nor could his wife sue him to recover the value of her services. Id.

---

[3] The Actuar case was not cited in the Defendants' Memorandum of Law.

[4] Here, the court noted that the Jones Act count sounded in tort which required the plaintiff to present all losses expected to occur in the future; whereas, the maintenance count sounded in contract which would not allow the plaintiff to present future losses. To avoid duplicative damages, the Court found it proper to allow the jury to consider the maintenance and cure count with the Jones Act and unseaworthiness count and to determine the amount awarded for medical bills under the Jones Act and unseaworthiness counts only, as it could not award these damages under the maintenance and cure count.

4

at 151, 3. Therefore, because there was no "contract" in effect, the plaintiff husband never paid or 'incurred a liability to pay' his wife for the services. This is not the case here.

In the instant case, the plaintiff has most certainly "incurred a liability to pay" her medical bills. It is no different than if plaintiff received payments from a private health insurer. The collateral source rule prohibits the introduction of such evidence and the defendants have no right to challenge the reasonableness of the plaintiff's bills based upon insurance benefits received by Medicaid. To allow such evidence will only serve to prejudice the plaintiff's claim for damages. As the Court noted in Harris-Lewis v. Mudge, supra at 487, 741 citing Goldstein v. Gontarz, supra, "[r]eceipts from an outside source do not go to reduce the defendant's liability in a medical malpractice action; yet jurors might be led by the irrelevancy to consider plaintiff's claims unimportant or trivial or to refuse plaintiff's verdicts or reduce them, believing that otherwise there would be unjust double recovery". Here, if defendants wish to challenge the reasonableness of the medical expenses, they should have called their own expert witness to testify as to the reasonableness of the medical bills. It is beyond the ordinary knowledge of the jurors to determine what constitutes "reasonable" charges for medical treatment and, further, by disclosing that payments were made by Medicaid at a discounted rate would only confuse the jury and certainly prejudice the plaintiff's damages claim.

The defendants further cite Stella v. Curtis, 348 Mass. 458, 204 N.E.2d 457 to support the notion that the Court specifically defined what it deemed medical "disbursements". In Stella, the Court merely generalized that "in personal injury cases, under the general issue of damages, there are issues as to pain and suffering, impairment of earning capacity, and disbursements for hospitalization and medical attendance". Id. at 463, 461. The Court offered no discussion whatsoever as to what constituted "disbursements". The word "disbursements" was merely the Court's characterization of medical expenses. Furthermore, the defendants are embellishing the holding of the case by qualifying "disbursements" with the word "actual" when the word "actual" does not appear anywhere in the case.

The defendants further argue in error that the U.S. District Court decisions do not permit recovery of amounts not paid or "disbursed". In support of this proposition, the

5

defendants rely on Adams v. United States, 964 F. Supp. 511 (D. Mass. 1996). Again, this case is not on point. In Adams, the plaintiff brought a negligence action under the Federal Tort Claims Act for personal injuries. The issue focused on the plaintiff's burden to establish (under Massachusetts substantive law) by a preponderance of the evidence, the existence of a causal connection between the defendant's actions (or inactions) and the injury sustained by plaintiff. In so discussing the claim, Magistrate Judge Bowler in a footnote stated that "in the event plaintiff's injuries were causally related to the defendant's conduct, the plaintiff should be fairly compensated for her damages including . . . "reasonable expenses incurred for medical care" (citations omitted), Id. at 525. [5]

Defendants further argue that since the plaintiff never incurred the higher medical charges that she did not become legally obligated to pay the amounts and rely on Lincoln Street Realty Co. v. Green, 374 Mass. 630, 373 N.E. 2d 1172 (1978) as controlling. Again, this case is irrelevant and not on point with the case at bar.[6]   The Lincoln Street Realty case involved an interpretation of the word "incurred" in the lease contract, not a claim for personal injury. The holding in this contract case has no bearing whatsoever to plaintiffs who incur medical bills in tort actions and, therefore, this case is not controlling in the case at bar.

Finally, the defendants argue that as a matter of substantive law, the plaintiff cannot recover the full amount of her medical bills and that the bills must be excluded from evidence. To support their position, the defendants cite Victim v. Martin, 367 Mass. 404, 326 N.E.2d 12 (1975) as authority. However, once again, this case is not on point to the case at bar. In Victum, the plaintiff prevailed in his action to recover personal injuries, including pain and suffering, sustained in a motor vehicle accident after he submitted as proof of his medical expenses his own testimony and two affidavits pursuant to M.G.L. c. 233, sec. 79G. The defendant appealed on the basis that the submission of the medical bills by way of affidavit of a physician that the charges were fair and reasonable does not justify the conclusion that such services were "necessary".

[5] Interestingly in this case, the defendant withdrew its claim for a set off of the federally funded portion of Medicaid benefits paid to plaintiff and instead sought a reduction for Personal Injury Protection (PIP) benefits which was statutorily allowed under Massachusetts law. Id. at p. 526.

[6] In Lincoln, the plaintiff brought a summary process claim and sought to recover attorney's fees recoverable under the lease agreement.  The issue presented was whether a person represented by an attorney who does not charge his clients may recover attorney's fees under a contractual clause which provides that the prevailing party shall recover reasonable attorney's fees incurred.

6

The Supreme Judicial Court reversed the order of the Appellate Division and held that for the purpose of this decision the Court need not attempt to define with black letter precision the term "necessary". Id. at 407, 15. The Court further opined that "the plaintiff must show that the treatment, which is the basis of the medical expenses, did legitimately arise out of the injury in the sense that the treatment rendered by a competent medical doctor was a bona fide effort to alleviate and ameliorate the injury". Id. The defendant further argued that independent medical testimony as to the necessity of medical services and consequent expenses would be required. However, the Court noted its reluctance to adopt so harsh a rule and stated that "where there are indications that the medical services were patently inefficient, excessively repetitious, not conducive to producing desired medical results, or disproportionately expensive, and where the injury is neither objectively visible nor well defined, the necessity for the medical services may be subject to more searching inquiry". Id. at 410, 17. This issue often comes up in a case of "soft tissue injury" with resultant numerous visits to the chiropractor or to physical therapy or massage therapist. Clearly, this is not the situation in the instant case. Here, the plaintiff has suffered numerous catastrophic orthopedic crush injuries from being ejected from a vehicle and run over by another vehicle resulting in numerous comminuted fractures. Her medical treatment was certainly necessary and not "patently inefficient, excessively repetitious, not conducive to producing the desired medical results, or disproportionately expensive". Therefore, the plaintiff is entitled to seek damages for the full extent of her medical expenses in connection with her treatment. If the Plaintiff is forced to prove the reasonableness and necessity of the medical treatment she will do so, however, in this case, it seems to be an unnecessary exercise that will waste judicial time. The defendants cannot be allowed to lessen their liability to plaintiff through evidence of collateral source payments.

## III. MASSACHUSETTS SUBSTANTIVE LAW APPLIES IN THIS CASE AND THIS COURT MUST FOLLOW THE COLLATERAL SOURCE RULE

The Massachusetts collateral source rule must be given full credit in this case as a rule of damages in a Federal diversity case. See Larocca v. Borden, Inc., supra; England v. Reinauer Transp. Companies, L.P., supra; Fitzgerald v. Expressway Sewerage Const.,

Inc., supra. The evidentiary implications flowing from that rule, however, are governed by the Federal Rules of Evidence. Evidence, though relevant, nonetheless may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403. Here, the defendants seek to introduce evidence of Medicaid payments. The plaintiff contends that any probative value of this evidence is substantially outweighed by the danger of unfair prejudice to plaintiff's damages claim. As the Court noted in Fitzgerald, supra, "[i]ntroduction of collateral source evidence almost inevitably creates a risk that a jury, informed, say, that a plaintiff has recourse to first party insurance proceeds may be unduly inclined to return either a defendant's verdict or an artificially low damage award. Id. at 75. This risk of prejudice is real, but Rule 403 directs that a trial court balance it against the evidence's probative worth and to exclude the evidence only when (and if) the discerned risk substantially outweighs the anticipated value. Id.

It is the tortfeasor's responsibility to compensate for all harm that he causes, not confined to the net loss that the injured party receives. Restatement (Second) of Torts sec. 920A. Under the Restatement, payments made or benefits conferred by other sources do not have the effect of reducing the recovery against the defendant. The injured party's net loss may have been reduced correspondingly, and to the extent that the defendant is required to pay the total amount there may be a double compensation for a part of the plaintiff's injury. But it is the position of the law that a benefit that it directed to the injured party should not be shifted so as to become a windfall for the tortfeasor. Massachusetts adopts the Restatement.

The plaintiff respectfully opposes the defendants' arguments and contends that such positions are contrary to Massachusetts's law. The plaintiff is entitled to be compensated for the full extent of her damages without reduction for any payments or discounts made by Medicaid.

8

Respectfully submitted,
MELISSA SEPPI,
By her attorney,

Edward F. Wallace, Esq.
BBO#: 513540
Law Offices of Edward F. Wallace, P.C.
Olde Boston Square
270 Littleton Road, Unit 22
Westford MA 01886
(978) 589-9995

Dated: November 28, 2005

## CERTIFICATE OF SERVICE

I, Edward F. Wallace, hereby certify that on this date the foregoing document was served upon all interested parties by mailing a true copy thereof, priority mail, postage prepaid, directed to their counsels of record:

> Kevin G. Kenneally, Esq.
> Donovan Hatem, LLP
> Representing Mezzanotte, LLC d/b/a Vision Nightclub
> Two Seaport Lane
> Boston, MA 02210
> Phone: (617) 406-4528

Edward F. Wallace, Esq.

Dated: November 28, 2005